# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# WESTERN DIVISION

JUAN C. ELSO, # 63187-004                                                                    PETITIONER

V.                                                          CIVIL ACTION NO. 5:10cv20-DCB-MTP

BRUCE PEARSON, Warden                                                RESPONDENT

## REPORT AND RECOMMENDATION

BEFORE THE COURT is the *pro se* Petition of Juan C. Elso for a Writ of Habeas Corpus [1] (the "Petition"), filed under 28 U.S.C. § 2241. Having considered the Petition, the Response [3] to Order; the Memorandum [2] in Support of Petition; the Answer [12], the Reply [13], all matters made a part of the record in this case, as well as applicable law, the undersigned is of the opinion that the Petition should be denied and dismissed with prejudice.

## Background

Petitioner Juan C. Elso was convicted of two counts of conspiracy to commit money laundering and one count of money laundering in violation of 18 U.S.C. § 1956 in the United States District Court for the Southern District of Florida, and on May 28, 1994, he was sentenced to serve 121 months, followed by three years of supervision, in the custody of the federal Bureau of Prisons ("BOP"). Petitioner is currently incarcerated at the Federal Correctional Complex in Yazoo City, Mississippi ("FCC Yazoo City"). *See* Exh. 2 to Answer.

In the Petition, filed on February 19, 2010, Petitioner challenges an Incident Report dated June 23, 2009 charging him with Possession of a Hazardous Tool (Cell Phone), in violation of Code 108 and Possession of Anything Not Authorized, in violation of Code 305.[1] He further

---

[1] BOP Program Statement (PS) 5270.07, Inmate Discipline and Special Housing Units, sets forth various prohibited acts identified by Code numbers and grouped into four categories of severity: greatest, high, moderate and low moderate. Specific sanctions are authorized for each

challenges related disciplinary proceedings through which he was ultimately found guilty of the offenses. Specifically, on June 23, 2009, Petitioner was seen entering the greenhouse at the Federal Prison Camp in Pensacola, Florida (FPC Pensacola)[2] alone and then quickly exiting with a box and a water bottle. Staff, who were monitoring inmate movement as the inmates were returning from their off-camp details, stopped Petitioner and examined the box, which was found to contain various contraband items, including two cell phones.[3] The water bottle was determined to contain bleach. Petitioner was issued an Incident Report which was delivered to him that day. *See* Exh. 4 to Answer.

On June 23, 2009, the Unit Disciplinary Committee (UDC) conducted a review of the incident. Petitioner stated to the committee that "he did not possess any of the contraband in the box and had no knowledge of it as it was sealed." Petitioner stated that "[h]e had the box for thirty seconds." *See* Exh. 4 to Answer. The UDC referred the charges to the Discipline Hearing Officer (DHO) for disposition.[4] Petitioner was advised of his rights before the DHO. He requested staff representation (a "Ms. Dougherty"), and although he indicated that he wished to call witnesses, he stated that he did "not have their names at this time." *See id.*

The DHO hearing was held on June 30, 2009 at the Jackson County Jail in Marianna,

---

category. *See* PS 5270.07, ch. 4 (available at http://www.bop.gov/policy/progstat.5270_007.pdf).

[2] Petitioner was apparently transferred to FCC Yazoo City on January 5, 2010. *See* Exh. 5 to Answer.

[3] The box contained the following items: 29 packets of Goya, 1 Motorola cell phone, 1 Nokia cell phone, 1 cell phone charger, 2 plastic Ziploc bags of seasoning, 2 packs of cigarettes, 2 cans of Skoal, 1 plastic bottle of cologne, 3 small bottles of cologne, 6 pairs of socks and 1 pack of 2 t-shirts. *See* Exh. 4 to Answer.

[4] *See* 28 C.F.R. 541.15 ("When an alleged violation of Bureau rules is serious and warrants consideration for other than minor sanctions, the UDC shall refer the charges to the Discipline Hearing Officer for further hearing.").

2

Florida.[5] Petitioner was advised of his rights. The staff representative requested by Petitioner was unavailable, and Petitioner was advised that the hearing could be postponed in order to allow him to obtain another staff representative. However, the record reflects that Petitioner chose instead to waive the right to a staff representative.[6] The record further reflects that Petitioner did not request any witnesses.[7] *See* Exhs. 1 & 4 to Answer. Petitioner made the following statement on his behalf: "I knew there was supposed to be a bottle of bleach in the box. I didn't know the other items were in there." *See* Exh. 4 to Answer.

Based on the Incident Report, including the direct observations of the reporting staff member, the investigation conducted by staff, and photographs of the cell phones and the other contraband found in Petitioner's possession, the DHO found Petitioner guilty of the charged conduct and imposed the following sanctions: disciplinary transfer, loss of phone and visitation privileges for one year, loss of commissary privileges for three months (except for stamps and personal hygiene items) and disallowance of 40 days of Good Conduct Time (GCT). *See* Exhs. 1 & 4 to Answer. The DHO based his decision on the fact that a cell phone in an inmate's

---

[5] Petitioner was apparently transferred to the Escambia County Jail following the UDC hearing, and was transferred to the Jackson County Jail on June 29, 2009, where he remained until he was transferred to the Federal Correctional Institution in Tallahassee, Florida (FCI Tallahassee) on August 12, 2009. *See* Exh. 5 to Answer; *see also* Petition at 3-4.

[6] The DHO, Stanley Davis, avers that if Petitioner not waived his right to a staff representative, he would have continued the hearing for a later date when a staff representative would have been available. *See* Exh. 1 to Answer (Declaration of Stanley Davis). Mr. Davis also explains that the DHO Report contained a typographical error, stating that "inmate Feaster" waived staff representation, rather than "inmate Elso." *See id.* Petitioner contends that he did not waive the right to staff representation. *See* Reply at 4-5.

[7] However, Petitioner contends that he provided the DHO with the names of five witnesses whom he wanted to call, and the DHO told him that he would not allow him to call them to testify. These witnesses were: Robert Hughes, Raul Gutierrez, Brian McGowan, Shannon Callis and J. Merritt. *See* Petition at 3.

possession creates a serious security risk for the institution.[8] *See* Exh. 4 to Answer. A copy of the DHO Report was delivered to Petitioner on July 16, 2009 at the Jackson County Jail.[9] *See id.*

In the instant Petition, Petitioner alleges that he was denied due process during the disciplinary proceedings and that his equal protection rights were violated. Petitioner also alleges that the BOP's actions have been arbitrary, capricious and retaliatory. Petitioner asks that the DHO's findings be expunged and that his GCT and lost privileges be restored. *See* Petition [1].

Analysis

As an initial matter, Respondent contends that Petitioner has failed to exhaust his administrative remedies.

Although a federal prisoner may properly use a section 2241 petition to challenge the manner in which a sentence is carried out or the prison authorities' determination of its duration,

---

[8] "The DHO determined inmate Elso's possession of a cellular phone constitutes possession of a hazardous tool. This is based upon the fact [sic] cellular phones and their components are electronic tools used to store data which include phone numbers, unauthorized pictures and or video which can include audio. Possession of this data could compromise the safety and security of the correctional facility, staff and inmates. It is a hazardous tool within the confines of the correctional setting because it can receive and transmit unmonitored and unauthorized transmissions to and from unauthorized sources. It may also be altered and used as a tool to jam or interfere with staff radio transmissions. Additionally, these electronic components may be used to interfere with electronic locking devices which could jeopardize the security of all staff and inmates. His ability to acquire a cell phone within the confines of a Minimum level facility indicate she is in need of more supervision, structure and control than he is currently being provided. Therefore, a Disciplinary Transfer is recommended to minimize the likelihood he will be able to breach the security of that facility in this manner again. Loss of his phone privileges was imposed because his actions were specifically designed to circumvent phone monitoring procedures. Loss of his visiting privileges will ensure family and friends cannot assist him in repeating this conduct. Additionally, when inmate [sic] possess unauthorized items, it is uncertain if they will be used to barter for more hazardous contraband or be used in an escape attempt. It is hoped by imposing all these sanctions the inmate will choose to follow the rules and regulations of the Bureau of Prisons and not engage in similar behavior of this nature in the future." *See* Exh. 4 to Answer.

[9] Petitioner claims, however, that he did not receive a copy of the report until July 21, 2009. *See* Petition at 4.

4

use of that authority does not avoid the necessity of exhaustion. *Fuller v. Rich,* 11 F.3d 61, 62 (5th Cir. 1994); *see also Mayberry v. Pettiford,* 74 Fed. Appx. 299, 299 (5th Cir. July 9, 2003) (recognizing application of judicially-created exhaustion requirement to section 2241 petition); *Mihailovich v. Berkebile,* 2007 WL 942091, at *5 (N.D. Tex. Mar. 28, 2007) (recognizing that claims for relief under section 2241 must generally be exhausted). The Fifth Circuit has consistently recognized that the exhaustion of administrative remedies is required for section 2241 petitions seeking credit on a petitioner's sentence. *See McMahon v. Fleming*, 145 Fed. Appx. 887, 888 (5th Cir. Aug. 15, 2005); *U.S. v. Gabor*, 905 F.2d 76, 78 n.2 (5th Cir. 1990).

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 548 U.S. 81, 90-91 (2006); *see also Jones v. Bock*, 549 U.S. 199, 218 (2007) ("[I]n *Woodford*, we held that to properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,' - rules that are defined...by the prison grievance process itself.") (citation omitted). "Exceptions to the exhaustion requirement are appropriate where the available administrative remedies either are unavailable or wholly inappropriate to the relief sought, or where the attempt to exhaust such remedies would itself be a patently futile course of action." *Schipke v. Van Buren*, 239 Fed. Appx. 85, 86 (5th Cir. Aug. 30, 2007) (quoting *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir.1994)). The Fifth Circuit has taken the position that exceptions to the exhaustion requirement only apply in "extraordinary circumstances," and the prisoner bears the burden of demonstrating the futility or unavailability of administrative review. *Id.*

The BOP's Administrative Remedy Program ("ARP") is set forth at 28 C.F.R. § 542.10, *et seq.* Appeals of DHO decisions must be submitted initially to the Regional Director for the region

5

where the inmate is housed (on a "BP-10" form) within twenty days of the DHO decision.[10]  From there, the inmate may appeal to the General Counsel.  That step "is the final administrative appeal" and its completion, therefore, constitutes exhaustion of administrative remedies.  The BOP will consider a late appeal upon a showing of a "valid reason" for the delay.  "In general, valid reason for delay means a situation which prevented the inmate from submitting the request within the established time frame."  Examples of valid reasons include: "an extended period in-transit during which the inmate was separated from documents needed to prepare the Request or Appeal; an extended period of time during which the inmate was physically incapable of preparing a Request or Appeal; an unusually long period taken for informal resolution attempts; [and] indication by an inmate, verified by staff, that a response to the inmate's request for copies of dispositions...was delayed."  *See* 28 C.F.R. §§ 542.14(b), 542.15(a).

The record reflects that Petitioner submitted a Regional Administrative Remedy Appeal dated August 17, 2009, in which he challenged the DHO's findings and sanctions.  The appeal was received by the BOP on August 21, 2009 and was rejected as untimely as it had not been received within twenty days of Petitioner's receipt of the DHO Report.  *See* [3-2].  Petitioner then appealed to the General Counsel on September 8, 2009, which upheld the rejection.  Petitioner was advised that if the late filing of his regional appeal was not his fault, he should resubmit the appeal, along with supporting documentation, to the Regional Director for review.  *See id.*  It does not appear from the record that Petitioner re-submitted his appeal.

Thus, it appears from the foregoing that Petitioner has failed to properly exhaust his administrative remedies.  Petitioner makes a number of arguments in an attempt to excuse his

---

[10] This is an exception to the general rule that an inmate must first present an informal grievance to prison staff, and if that does not resolve the issue, the inmate must submit a formal Request for Administrative Remedy, after which the inmate may appeal to the appropriate BOP Regional Director.  *See* 28 C.F.R. § 542.10, *et seq.*

failure to exhaust. First, Petitioner argues that the hearing was held on June 30, 2009, but the DHO report was not prepared until July 16, 2009, beyond the 10 day time limit provided in the applicable rules and regulations.[11] *See* Petition at 4. Petitioner also complains that he did not personally receive the report until July 21, 2009.[12] *See id.* The fact that the DHO report was not prepared until July 16, 2009 is of no moment, since the 20 day period for filing an appeal runs from the receipt of the DHO report. *See* 28 U.S.C. § 542.14. Even assuming *arguendo* that Petitioner did not receive the DHO report until July 21, 2009, his appeal would have been due on August 10, 2010. However, Petitioner did not submit his appeal until August 17, 2009. *See* [3-2].

Petitioner also claims that when he received the DHO Report, he spoke with the DHO and requested a BP-10 form in order to appeal the decision. He claims that he was advised by the DHO that he did not have any forms available, but that they would be available at FDC Tallahassee. Petitioner claims that the DHO further advised him that his appeal would be deemed timely because the rules provided an extension of time while Petitioner was in transit and lacked the necessary paper or forms to file his appeal. *See* Petition at 4. The court notes that the DHO denies that he ever told Petitioner he could file his appeal late due to his pending transfer. *See* Davis Decl. ¶ 11. At any rate, the DHO report indicates that Petitioner was informed that he had a right to appeal the decision "within 20 calendar days." *See* Exh. 4 to Answer.

Petitioner further claims that out of an "abundance of caution," he submitted a handwritten

---

[11] Presumably, Petitioner is referring to 28 C.F.R. § 541.17(g), which states that the DHO will provide the inmate a written copy of the decision and disposition "ordinarily" within ten days of decision. The DHO report states: "The DHO notes the inmate did not receive his copy of the DHO report ordinarily within 10 days due to the DHO being on annual leave. Once the DHO returned, the report was completed and provided to the inmate. This delay will not impede his ability to appeal this decision." *See* Exh. 4 to Answer.

[12] Petitioner claims that the report was delivered to the Jackson County Jail on July 16, 2009, but was not provided to him until July 21, 2009. *See* Petition at 4.

7

appeal to the Regional Director on July 27, 2009 in which he gave notice of his intent to appeal as soon as he was able to obtain the necessary forms. [13] *See id.*; Exh. D to Petition. However, pursuant to 28 C.F.R. §§ 542.14(c), 542.15(b), all inmate appeals are required to be submitted on a BP-10 form. *See* 28 C.F.R. §§ 542.14(c); 542.15(b).

The court recognizes that there is conflicting information in the record regarding when Petitioner may have had access to the appropriate forms, and what he may have been told regarding the deadline for submitting his appeal. The court need not resolve these issues, however, as the Petition fails on its merits as discussed below.

Due Process Claims

In *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Supreme Court held that disallowance of GCT, which will result in an inmate's confinement being extended, requires due process.[14]

---

[13] Petitioner avers that he was transferred to FCI Tallahassee on August 12, 2009, that he requested the necessary forms for his appeal on August 13, 2009, and that the forms were provided on August 14, 2009. *See* Petition at 4-5. As noted *supra*, Petitioner submitted his appeal on August 17, 2009. *See id.* at 5; [3-2].

[14] However, with respect to the other sanctions imposed on Petitioner (loss of visitation. telephone and commissary privileges and recommendation of disciplinary transfer) no process was due. "[T]he Due Process Clause does not protect every change in the conditions of confinement which has a substantial adverse effect upon a prisoner." *Madison v. Parker*, 104 F.3d 765, 767 (5th Cir. 1997) (citing *Sandin v. Conner*, 115 S.Ct. 2293, 2297 (1995)). Rather, the liberty interests which are protected by the Due Process Clause "are generally limited to state created regulations or statutes which affect the quantity of time rather than the quality of time served by a prisoner." *Id.* (citing *Sandin*, 115 S.Ct. at 2297). Accordingly, restrictions or loss of an inmate's institutional privileges, as well as changes in custodial status, do not provide a basis for a constitutional claim. *See Wilkerson v. Stadler*, 329 F.3d 431, 435-36 (5th Cir. 2003) (stating that the Fifth Circuit "has continued to hold post-*Sandin* that an inmate has no protectable liberty interest in his classification"); *Lewis v. Dretke*, 54 Fed. Appx. 795, at * 1 (5th Cir. Dec. 11, 2002) (prisoner's claim challenging restriction of commissary privileges and loss of telephone privileges resulting from allegedly false discipline charges did not implicate due process); *Berry v. Brady*, 192 F.3d 504, 508 (5th Cir. 1999) (no constitutional right to visitation privileges); *Pichardo v. Kinker*, 73 F.3d 612, 613 (5th Cir. 1996) ("administrative segregation, without more, simply does not constitute a deprivation of a constitutionally cognizable liberty interest." (quoting *Luken v. Scott*, 71 F.3d 192, 193 (5th Cir. 1995) (rejecting claim that confinement in administrative segregation violated a prisoner's due process rights)); *Wilson v.*

8

However, the Court explained that due process in the context of prison discipline is not the same as due process in the criminal law context because "[p]rison discipline proceedings are not a part of a criminal prosecution, and the full panoply of rights due a criminal defendant does not apply." *Id.* at 556. Thus, the Court held that due process is satisfied in prison disciplinary hearings when the inmate receives a finding from an impartial decision maker,[15] and also receives: 1) at least 24 hours advance written notice of the charges; 2) an opportunity to present documentary evidence and testimony from witnesses; 3) help from other inmates or staff, if needed (*e.g.*, if the inmate is illiterate or the charges are complex); and 4) a written statement of the evidence relied on and the reason for the disciplinary action. *Id.* at 564-70. As set forth below, Petitioner clearly received these protections.

First, Petitioner was provided more than 24 hours of notice of the charges against him, as the Incident Report was delivered on June 23, 2009 and the DHO hearing was conducted on June 30, 2009. *See* Exh. 4 to Answer. Petitioner claims that the BOP "failed to follow their own regulations by failing to provide [him] with notice of the rules which [he] was charged with violating and for which he was ultimately sanctioned." *See* Petition at 5-6. This claim is spurious. The Admission and Orientation Handbook, which Petitioner received upon his intake at FPC Pensacola, clearly sets forth the various prohibited acts that may subject an inmate to sanctions (including possession of anything not authorized), and the various prohibited items that

---

*Bundy*, 976 F.2d 957, 958 (5th Cir. 1992) (citing *Moody v. Baker*, 857 F.2d 256, 257-58 (5th Cir.1988)) ("A prison inmate does not have a protectable liberty or property interest in his custodial classification."); *Williams v. Geo Group, Inc*., 2008 WL 2724889, at *1 (S.D. Miss. July 10, 2008) ("The classification of Plaintiff in a certain level of custody and the loss of prison privileges are not an 'atypical and significant hardship' of prison life."). Moreover, the court notes that prisoners have no constitutional right to be incarcerated in a certain facility, *see Olim v. Wakinekona*, 461 U.S. 238, 245 (1983), and "[c]lassification of prisoners is a matter left to the discretion of prison officials." *McCord v. Maggio*, 910 F.2d 1248, 1250-51 (5th Cir. 1990).

[15] Petitioner does not challenge the impartiality of the DHO.

constitute contraband (including hazardous tools). *See* Exhs. 6 & 7 to Answer. The Incident Report and Notice of Hearing clearly state that Petitioner was being charged for possession of the cell phone and possession of unauthorized items, in violation of Code Numbers 108 and 305. *See* Exh. 4 to Answer. Accordingly, Petitioner was clearly on notice of the charges against him.

Petitioner further claims that the BOP failed to conduct an investigation prior to charging him and conducting the disciplinary hearings, also in violation of regulations.[16] *See* Petition at 6. Even if this were true, however, "a failure to conduct a prompt and thorough investigation prior to a disciplinary hearing does not rise to the level of a due process violation." *Moles v. Holt*, 221 Fed. Appx. 92, 96 (3d Cir. Mar. 23, 2007). Moreover, Petitioner had an adequate opportunity to refute the charges at the hearing and, therefore, he "has failed to show that the alleged oversight caused him prejudice." *Id.* (rejecting due process claim that prison officials failed to conduct thorough investigation).

Second, Petitioner was provided an opportunity to present documentary evidence but chose not to, and he made a statement on his behalf. *See* Exh. 4 to Answer. Petitioner claims that he provided the DHO with the names of five witnesses whom he wanted to call to testify, but the DHO would not let him call them as witnesses. *See* Petition [1] at 3. Petitioner avers - without explanation - that these witnesses possessed relevant and exculpatory information. *See* Reply [13] at 11. "Mere conclusory statements do not raise a constitutional issue in a habeas case." *Schlang v. Heard*, 691 F.2d 796, 799 (5th Cir. 1982). Moreover, even assuming that Petitioner requested these witnesses at the hearing (a claim which is unsupported by the record), he has not established

---

[16] 28 C.F.R. § 541.14(b)(2) provides in pertinent part: "The investigator shall ... thoroughly investigate the incident. The investigator shall record all steps and actions taken on the Incident Report and forward all relevant material to the staff holding the initial hearing."

that the witnesses had relevant information or that they were available to testify.[17] *See* 28 C.F.R. § 541.17(c) ("The DHO shall call those witnesses who have information directly relevant to the charge(s) and who are reasonably available."). Further, "[t]o be entitled to relief, a federal habeas petitioner must demonstrate that 'the error at issue "had substantial and injurious effect or influence in determining" the proceeding's outcome.'" *Brantley v. Quarterman*, 2007 WL 2746956, at * 3 (S.D. Tex. Sept. 18, 2007) (citing *Williams v. Johnson*, 171 F.3d 300, 307 (5th Cir. 1999)). Petitioner has failed to make such a showing, as there was ample evidence of Petitioner's guilt before the DHO.

Third, as discussed *supra* the staff representative whom Petitioner had requested was unavailable at the time of the DHO hearing. Petitioner was advised that the hearing could be postponed in order to allow him to obtain another staff representative, but he chose instead to waive the right to a staff representative. *See* Exhs. 1 & 4 to Answer. Petitioner denies waiving the right to a staff representative. *See* Reply at 4-5. Nevertheless, a prisoner does not have a general constitutional right to have a staff representative appear on his behalf in a disciplinary proceeding. *See Tewell v. Outlaw*, 2008 WL 4216423, at * 4 (E.D. Ark. Sept. 12, 2008) (citing *Hudson v. Hedgepeth*, 92 F.3d 748, 751 (8th Cir. 1996)); *see also Marshall v. Champion*, 82 F.3d 426, at * 2 (10th Cir. Apr. 18, 1996); *Watt v. Thaler*, 2010 WL 99352, at * 3 (N.D. Tex. Jan. 11, 2010) (citing *Baxter v. Palmigiano*, 4256 U.S. 308, 315 (1976); *Wolff*, 418 U.S. at 570)). Rather, due process requires only that inmates be provided with a staff representative where they are illiterate or "the complexity of the issue makes it unlikely that the inmate will be able to collect

---

[17] Petitioner attached to his Reply an affidavit dated July 8, 2009 from one of his proposed witnesses, Mr. Gutierrez, who avers that he was an eyewitness to the events of June 23, 2009 and that he did not see Petitioner carrying a box into or out of the greenhouse. *See* Exh. A to Reply. However, the affidavit appears to contradict Petitioner's own statements, including his account of the incident in the ARP process wherein Petitioner claimed he had been "merely observed moving [the] box...." *See* [3-2] at 2.

and present the evidence necessary for an adequate comprehension of the case." *Tewell*, 2008 WL 4216423, at * 4 (citing *Wolff*, 418 U.S. at 570); *see also Evans v. Henman*, 925 F.2d 1468, at * 2 (7th Cir. Feb. 20, 1991); *see also Hart v. Whalen*, 2009 WL 5173487, at * 7 (M.D. Pa. Dec. 22, 2009). Petitioner does not allege that he is illiterate (and his pleadings belie such an allegation). Nor were the issues in his disciplinary proceeding complex. Thus, he has not established a violation of due process on this basis.

Finally, Petitioner was provided a written statement of the evidence the DHO relied on and the reasons for the disciplinary actions. *See* Exh. 4 to Answer. Petitioner argues that the DHO report was not prepared until July 16, 2009, beyond the 10 day time limit provided in the applicable rules and regulations. *See* Petition at 4. Petitioner also complains that he did not personally receive the report until July 21, 2009. *See id.* However, there is no due process requirement that the written statement be delivered to an inmate within a particular timeframe. *See Wolff*, 418 U.S. at 564-70. To the extent that Petitioner claims that the delay in providing him with the DHO report constituted a violation of BOP policy, "a prison official's failure to follow the prison's own policies, procedures or regulations does not constitute a violation of due process, if constitutional minima are nevertheless met." *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996); *see also Hernandez v. Estelle*, 788 F.2d 1154, 1158 (5th Cir. 1986) (mere failure of prison officials to comply with their own regulation is not a constitutional violation).

Thus, Petitioner was given all the procedural safeguards to which he was due. Likewise, Petitioner's challenge to the sufficiency of the evidence fails. In order for a prison disciplinary decision to pass constitutional muster there merely must be "some evidence" to show that the inmate committed the offense in question. *Superintendent, Massachusetts Correctional Institution v. Hill*, 472 U.S. 445, 455 (1985). "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of

witnesses or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 455-56. Indeed, even if the evidence is "meager," as long as there is "some evidence" to support the findings of the disciplinary board, its decision must be upheld. *Id.* at 456.

In the instant case, the DHO reviewed the evidence presented, including the direct observations of the reporting staff member set forth in the Incident Report, the investigation conducted by staff, and photographs of the cell phones and the other contraband found in Petitioner's possession. The DHO also considered Petitioner's testimony, but concluded that "the greater weight of evidence" was to be given to the Incident Report and physical evidence of the contraband.[18] *See* Exh. 4 to Answer. "Determining the believability of the testimonies presented at the hearing is left to the discretion of the hearing officer." *Hudson v. Johnson*, 242 F.3d 534, 537 (5th Cir. 2001). In this case, there was clearly "some evidence" to support the DHO's finding. *See Hill*, 472 U.S. at 456 (prison guard's testimony and copies of his written report supported conclusion that the evidence before the disciplinary board was sufficient to meet the requirements imposed by the Due Process Clause); *Hudson*, 242 F.3d at 536-37 (holding that the information provided in a written incident report can, standing alone, satisfy the "some evidence" standard). As there was "some evidence" to support the DHO's decision, it must be upheld. *See Hill*, 472 U.S. at 454-55; *see also Reeves v. Pettcox*, 19 F.3d 1060, 1062 (5th Cir. 1994) ("[P]rison disciplinary proceedings will be overturned only where there is *no evidence whatsoever* to support the decision of the prison officials.") (emphasis added).

---

[18] *See* 28 C.F.R. § 541.17(f) ("The DHO shall consider all evidence presented at the hearing. The decision of the DHO shall be based on at least some facts, and if there is conflicting evidence, it must be based on the greater weight of the evidence.").

Equal Protection Claims

In addition to his due process challenges, Petitioner also claims that his equal protection rights were violated. Specifically, he argues that he was charged with a "'greatest severity category' PAC 108 offense" for his possession of a cellphone, whereas "other similarly situated inmates" have been charged with a "'high severity category' PAC 297 offense."[19] *See* Petition at 6. He also claims that an equal protection violation occurred because he received more restrictive telephone and visitation sanctions than two other inmates who were also found guilty of the possession of a hazardous tool (cell phone) by the same DHO. *See id.; see also* Reply at 14-15.

"A claimant who alleges an equal protection violation has the burden of proving the existence of purposeful discrimination." *Edwards v. Johnson*, 209 F.3d 772, 780 (5th Cir. 2000) (citing *McCleskey v. Kemp*, 481 U.S. 279, 292 (1987)). "Discriminatory purpose 'implies that the decisionmaker singled out a particular group for disparate treatment and selected his course of action at least in part for *the purpose* of causing its adverse effect on an identifiable group." *Id.* (quoting *Lavernia v. Lynaugh*, 845 F.2d 493, 496 (5th Cir. 1988)) (emphasis in original). Petitioner has failed to make this showing. Accordingly, this claim has no merit and should be denied.

Retaliation

Finally, Petitioner claims that while he was in transit, unidentified staff at FPC Pensacola

---

[19] The court notes that at least one district court in this Circuit has considered and rejected the argument that possession of a cellphone should not constitute a Code 108 offense (possession of a hazardous tool), finding that "[i]t is evident that a cellular telephone could constitute a hazardous tool as it would permit inmates, whose telephone conversations are normally monitored, to communicate with individuals outside the prison without being monitored. Obviously it would be easier to plan an escape or attempt to have contraband brought into the institution if an inmate could communicate with people outside the institution without fear of being monitored." *Barnes v. Warden, FCI Texarkana*, 2008 WL 3481942, at * 2 (E.D. Tex. Aug. 7, 2008).

"intentionally and deliberately destroyed petitioner's personal property in a retaliatory fashion." *See* Petition at 6.

A habeas petition is not the appropriate vehicle for such a claim, as it challenges the nature and conditions, rather than the validity or duration, of Petitioner's confinement. Instead, this claim should be asserted in a civil rights complaint. *See*, *e.g.*, *Spencer v. Bragg*, 310 Fed. Appx. 678, 679 (5th Cir. Feb. 18, 2009) (holding that claims relating to conditions of confinement - including retaliation - should be brought in civil rights action rather than §2241 habeas petition); *Cook v. Hanberry*, 592 F.2d 248, 249 (5th Cir. 1979) ("The sole function of habeas corpus is to provide relief from unlawful imprisonment or custody, and it cannot be used for any other purpose"; therefore, it "is not available to prisoners complaining only of mistreatment during their legal incarceration."). Accordingly, Petitioner's claims of retaliation are not an appropriate basis for habeas review and should be dismissed.

## RECOMMENDATION

For the reasons stated above, it is the recommendation of this court that Juan C. Elso's Petition for a Writ of Habeas Corpus [1] be denied and dismissed with prejudice.

## NOTICE OF RIGHT TO OBJECT

In accordance with the rules and 28 U.S.C. § 636(b)(1), any party within fourteen days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the judge, the magistrate judge and the opposing party. The District Judge at the time may accept, reject or modify in whole or part, the recommendations of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions. The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of

plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court to which the party has not objected. *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

THIS, the 1st of September, 2010.

s/Michael T. Parker  
United States Magistrate Judge